NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 17, 2010
Decided July 1, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2148

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

    *v.*

SOWANDE DIXIE,
      *Defendant-Appellant.*

Appeal from the United States District
Court for the Northern District
of Indiana, Fort Wayne Division.

No. 1:07-CR-33

Theresa L. Springmann,
*Judge.*

**O R D E R**

Sowande Dixie pleaded guilty to possessing with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and possessing a firearm during and in relation to that drug-trafficking crime in violation of 18 U.S.C. § 924(c). The drugs and the gun were recovered from Dixie during a traffic stop, and the evidence against him also included self-incriminating statements he made to the police following his arrest. Dixie moved to suppress the drugs, gun, and statements on the ground that this evidence was the fruit of an unreasonably long traffic stop. When his suppression motion failed, he pleaded guilty to the drug and gun charges, expressly reserving the right to appeal the district court's denial of his motion to suppress. We now affirm.

On March 6, 2007, Officer George Nicklow was patrolling the streets of Fort Wayne, Indiana, when he spotted a truck with a broken taillight. The officer initiated a traffic stop and activated the patrol car's videorecording system; the ensuing encounter was thus captured on video. The truck pulled over in response to the signal, and Officer Nicklow approached the driver—Sowande Dixie—and informed him that his passenger-side taillight was not working properly.[1] Dixie said he had something to fix the light and started to reach beneath the seats and around the passenger compartment of the truck. Officer Nicklow told him to keep his hands still and on the steering wheel—a warning that he had to repeat when Dixie continued to rummage around in his truck. Officer Nicklow then asked Dixie for his driver's license, registration, and proof of insurance. Dixie provided his driver's license and registration, but could not produce proof of insurance (although he insisted that he was indeed insured).

Officer Nicklow returned to his patrol car to run a check on the documents Dixie had provided. It took less than five minutes to complete this background check. During this time, Officer Rich Paige arrived on scene, and Officer Nicklow told him he intended to ask Dixie to step out of the truck. Officer Nicklow testified at the suppression hearing that he had no intention of writing a citation at this time, but only wanted Dixie to see the broken taillight for himself in order to establish that there had been a legitimate basis for the traffic stop.

With the background check complete, Officer Nicklow returned to Dixie and asked him to "jump out" of the truck "real quick." Dixie dropped his cell phone as he got out of the truck. As he retrieved the phone with his right hand, he simultaneously reached with his left hand back into the truck in the area under the driver's seat. Officer Nicklow tried to see what Dixie was doing and told him, "Just don't grab . . . here, here I'll get it. Don't go digging for nothing."

Officer Nicklow then showed Dixie the broken taillight. Seconds later, he said: "Before I give you [your license and registration] back, you got any weapons or anything on you that I need to know about?" Dixie immediately acknowledged that he was carrying a knife and reached for his pants pocket. Officer Nicklow told Dixie to keep his hands still and began a frisk. As he searched, he asked Dixie if he had anything else. Dixie pointed to his jacket pocket. After some evasive and unintelligible responses, Dixie admitted to having a gun. At this point Dixie was placed under arrest.

The officers recovered a loaded gun from Dixie's hip area and crack cocaine from his pocket. Officer Nicklow asked Dixie why he was carrying a gun and inquired if it was related to the "white stuff." Dixie said it was. Officer Nicklow eventually learned from

---

[1] This was a violation of section 9-19-6-4 of the Indiana Code.

dispatch that Dixie did not have a permit for the gun and that he had prior felony convictions.

Following his arrest, Dixie was interviewed at the Fort Wayne Police Department by Detectives Miguel Rivera and Teresa Smith. Dixie was read his *Miranda* rights prior to this interview, and he acknowledged and waived his rights in order to cooperate with the police. He admitted his involvement in drug dealing and said he carried his firearm for protection during drug deals. After the interview was completed, Dixie was released from custody to assist the police as a confidential informant against other drug dealers. Two days later, on March 8, Dixie voluntarily met again with the detectives and repeated his incriminating statements.

Dixie concedes that the initial traffic stop was valid on account of his broken taillight. He contends, however, that Officer Nicklow's questioning unreasonably prolonged an otherwise lawful detention and was not justified by the purpose of the investigatory stop. Officer Nicklow had already decided not to cite him for the broken taillight, so Dixie argues that the question about weapons constituted an unreasonable extension of the seizure and that all the evidence recovered thereafter—the drugs, gun, and Dixie's self-incriminating statements of March 6 and March 8—should have been suppressed.[2]

On an appeal of a denial of a suppression motion, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Are*, 590 F.3d 499, 504 (7th Cir. 2009). The district court concluded that Dixie's suppression argument was foreclosed by our opinion in *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc); this conclusion was manifestly correct. In *Childs* we explicitly held that the Fourth Amendment does not require the release of a person from a traffic stop "at the earliest moment that step can be accomplished." *Id.* at 953-54. Instead, "[w]hat the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *Id.* at 954. The Supreme Court has recently confirmed this understanding. *See Arizona v. Johnson*, 129 S. Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

Here, the district court noted that it took "only seconds longer" for Officer Nicklow to ask Dixie about any weapons on his person and then to recover Dixie's knife and unlicensed gun when he answered in the affirmative. Indeed, Dixie has conceded, both in

---

[2]  During the suppression hearing, the government stipulated that it would not seek to admit the non-*Mirandized* statement Dixie made to Officer Nicklow at the scene immediately following his arrest.

his brief and at oral argument, that the increased length of the detention was "nominal." Accordingly, the officer's actions cannot be said to have caused Dixie any appreciable inconvenience or to have unreasonably prolonged the duration of the stop. Dixie emphasizes that Officer Nicklow withheld his license and registration while he inquired about weapons, thus appearing to condition the return of the documents on Dixie's response to the question. This establishes only that the seizure continued, not that it was unreasonable. A seizure does not have to be consensual to be reasonable. *See, e.g., Johnson*, 129 S. Ct. at 787-88. The district court properly denied Dixie's suppression motion.

There is one outstanding issue. Dixie also argues that his two statements to Detectives Rivera and Smith should have been suppressed under *Missouri v. Seibert*, 542 U.S. 600 (2004), because although they were preceded by proper *Miranda* warnings, his earlier statement to Officer Nicklow was not. He maintains that his unwarned statement at the scene of the traffic stop tainted his later, fully warned statements, requiring suppression of the latter.

*Seibert* was decided by a deeply divided Supreme Court; we have previously explained that Justice Kennedy's separate concurrence represents the narrowest ground of the decision. *United States v. Stewart*, 388 F.3d 1079, 1090 (7th Cir. 2004). And Justice Kennedy's opinion was limited to the *deliberate* use of a two-step interrogation process in which *Miranda* warnings are withheld until after the suspect confesses; when the police intentionally "question first and warn later," the admissibility of the second, *Mirandized* confession depends on an evaluation of the change in time, place, and circumstances between the unwarned and warned confessions. *Id.*

As the government notes, however, Dixie invoked *Seibert* for the first time on appeal. His only argument in the district court was that his inculpatory statements were the fruit of an unreasonable seizure and accompanying search. In his plea agreement, Dixie expressly waived his right to appeal, save for "the issues decided" by the district court in its ruling on the suppression motion. The district judge did not decide the *Seibert* issue because it was never raised. Dixie has therefore waived this issue, and we are precluded from considering it on appeal. *See United States v. Hamilton*, 499 F.3d 734, 735 (7th Cir. 2007).

AFFIRMED.