2011 UT App 251

**STATE of Utah, Plaintiff and Appellee,**

v.

**Milo SIMONS, Defendant and Appellant.**

**No. 20080109–CA.**

Court of Appeals of Utah.

July 29, 2011.

**54**

Douglas J. Thompson, Provo, for Appellant.

Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee.

Before Judges McHUGH, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶ 1 Milo Simons appeals from his conviction for possession of methamphetamine, a third degree felony, *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2010),[1] arguing that a police officer violated his Fourth Amendment rights by impermissibly extending the length of a traffic stop without reasonable suspicion. We affirm.

¶ 2 On the evening of October 21, 2006, Deputy John Luke was on patrol near Springville, Utah, with another officer whom he was training when he observed a vehicle traveling approximately ten miles per hour over the posted speed limit. After a computer check revealed that the vehicle was also uninsured, Deputy Luke initiated a traffic stop. The officer-in-training made initial contact with the vehicle's driver. During this initial encounter, Deputy Luke approached the vehicle from the passenger side to observe the exchange. Simons was sitting in the front passenger seat, but Deputy Luke did not speak with him at the time. The officers then met behind the vehicle. After a brief exchange between the officers, Deputy Luke approached the driver, as Deputy Luke would be the one actually issuing the citation if it were determined that a citation was appropriate. Deputy Luke requested the driver's license, registration, and proof of insurance. The driver explained that the vehicle was borrowed and that he was unable to provide proof of insurance.

¶ 3 Deputy Luke testified at the preliminary hearing that at this point, he observed signs of possible impairment in the driver, including watery, bloodshot eyes, and rapid speech and movement. Deputy Luke continued to observe "agitated" movements in the driver after he went back to his patrol car to conduct a records check. When he again approached the driver after conducting the records check, the driver "blurted out ... without being questioned" that he was not drunk, told Deputy Luke to "look at [his] eyes," and "forced his face towards the window." Deputy Luke asked the driver to step out of the vehicle because he wanted to conduct field sobriety tests. As the driver stepped out of the vehicle, Deputy Luke observed, in the driver's side door compartment, "several baggies that had been chewed on." Deputy Luke testified that in his experience, he had only ever seen these types of baggies used to carry drugs and he noticed "white powder of a small crystal residue inside" the baggies, which he suspected was methamphetamine.

¶ 4 Deputy Luke testified that after he found the baggies, he "had the assisting officer just stand by with [the driver]" while he approached Simons, who was still sitting in the passenger seat. He explained to Simons that he had found paraphernalia in the car and asked Simons if there was "anything on his person [Deputy Luke] need[ed] to know about." Simons immediately confessed to

---

1. Because the relevant sections of the code have not changed, we cite to the current version as a convenience to the reader.

having a pipe in his underwear. Deputy Luke then had Simons step out of the vehicle and shake the pipe out of his pants, where it fell to the ground. After the officers searched the driver and placed him under arrest, Simons informed Deputy Luke that he also had methamphetamine in his pocket.[2]

¶ 5 Simons was charged with possession of drug paraphernalia, a class B misdemeanor, see id. § 58–37a–5(1), and possession of a controlled substance, a second degree felony, see id. § 58–37–8(2)(a)(i). Simons was bound over for trial following a preliminary hearing. Before trial, he filed a motion to suppress the evidence of the pipe and methamphetamine, arguing that it was obtained in violation of his rights against unreasonable search and seizure pursuant to the Fourth Amendment to the United States Constitution, see U.S. Const. amend. IV.[3] The trial court denied Simons's motion, concluding that the used condition of the baggies "coupled with the possible impairment [of the driver] le[d] to a reasonable suspicion and concern about both occupants of the car." Following the trial court's denial of his motion, Simons entered a conditional guilty plea to the charge of possession of a controlled substance,[4] reserving his right to appeal the denial of his motion to suppress, see State v. Sery, 758 P.2d 935, 939 (Utah Ct.App.1988).

■ ¶ 6 Simons appeals, arguing that the evidence in this case should be suppressed because Deputy Luke exceeded the permissible length and scope of the stop when, without reasonable suspicion that Simons was engaged in any criminal activity, he turned his attention from the driver to Simons and asked Simons if he had "anything on his person [Deputy Luke] need[ed]

to know about." When reviewing a trial court's denial of a motion to suppress, we review the findings of fact under a clearly erroneous standard, see State v. Worwood, 2007 UT 47, ¶ 12, 164 P.3d 397, and its legal conclusions for correctness, see State v. Baker, 2010 UT 18, ¶ 7, 229 P.3d 650. " 'When a case involves the reasonableness of a search and seizure, we afford little discretion to the district court because there must be statewide standards that guide law enforcement and prosecutorial officials.' " Id. (quoting State v. Warren, 2003 UT 36, ¶ 12, 78 P.3d 590). Because we conclude that Deputy Luke did not exceed the permissible length of the stop, we need not determine whether Deputy Luke's questioning of Simons was supported by reasonable suspicion. See Bailey v. Bayles, 2002 UT 58, ¶ 13, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record." (emphasis and internal quotation marks omitted)).

■ ¶ 7 The Fourth Amendment to the United States Constitution protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. "Although police must have a warrant to conduct most searches and seizures, 'officers may temporarily detain a vehicle and its occupants upon reasonable suspicion of criminal activity for the purpose of conducting a limited investigation of the suspicion.' " Baker, 2010 UT 18, ¶ 11, 229 P.3d 650 (quoting State v. James, 2000 UT 80, ¶ 10, 13 P.3d 576). Although " 'one does not lose the protection of the Fourth Amendment while in an automobile,' " id. (additional internal quotation marks omitted) (quoting State v. Lopez, 873 P.2d 1127, 1131 (Utah 1994)), the " 'automobile excep-

2. Deputy Luke retrieved the bag from Simons's pocket and he testified that the bag's contents were subsequently tested and identified as methamphetamine.

3. Simons also cites article I, section 14 of the Utah Constitution in arguing that Deputy Luke's actions violated his rights against unreasonable searches and seizures. However, because he has not argued for a separate analysis under the Utah Constitution, we consider only Simons's federal constitutional claim. See State v. Bean, 869 P.2d 984, 988 (Utah Ct.App.1994) ("[A]n appellate court can decline to address state constitutional

claims under article I, section 14 if the party fails to proffer any explanation as to how this court's analysis should differ under this section from the federal counterpart." (internal quotation marks omitted)). The Fourth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment. See U.S. Const. amend. XIV.

4. In exchange for pleading guilty to possession of a controlled substance, the State agreed to dismiss the charge against Simons for possession of drug paraphernalia.

tion' to the warrant rule arises because occupants of a vehicle have a lesser expectation of privacy 'due to the mobile nature of vehicles and their highly regulated status,' " *id.* (quoting *James*, 2000 UT 80, ¶ 10, 13 P.3d 576).

¶ 8 In order to determine whether a traffic stop is reasonable under the Fourth Amendment, we apply a two-step test. *See id.* ¶ 12. "The first step is to determine whether the police officer's action [was] justified at its inception. In the second step, we must determine whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* (alteration in original) (internal quotation marks omitted). Simons concedes that Deputy Luke was justified in pulling the vehicle over for a speeding violation. *See Lopez*, 873 P.2d at 1132 ("[A] police officer is constitutionally justified in stopping a vehicle if the stop is incident to a traffic violation committed in the officer's presence." (internal quotation marks omitted)). We now address Simons's contention that Deputy Luke's conduct exceeded the scope of the traffic stop here.

¶ 9 For the duration of a lawful traffic stop, " '[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.' " *Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650 (quoting *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009)). Unless the officer forms new reasonable articulable suspicion or probable cause of further criminal activity during the course of the traffic stop, "the officer must allow the seized person to depart once the purpose of the stop has concluded." *Id.; see also State v. Hansen*, 2002 UT 125, ¶ 31, 63 P.3d 650 ("Any further temporary detention for investigative questioning after [fulfilling] the purpose for the initial traffic stop constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality." (alteration in original) (internal quotation marks omitted)). If, during the course of the traffic stop, police officers develop probable cause to arrest the driver, the passengers may lawfully be detained until the arrest is complete. *See Baker*, 2010 UT 18, ¶¶ 16, 19, 229 P.3d 650. "At that time, officers must release any passengers who were detained incident to the detention of the vehicle." *Id.* ¶ 19.

¶ 10 During the course of an otherwise lawful encounter, however, officers may pose questions to drivers and passengers unrelated to the scope of the stop without reasonable suspicion of criminal activity, so long as those actions do not measurably extend the length of the stop. *See Johnson*, 129 S.Ct. at 788 ("An officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). In making the determination of whether the stop has been measurably extended, "[a] court should not micromanage the details of a traffic stop to ensure that no actions of the police improperly extend the stop so long as the duration of the stop is reasonable under the totality of the circumstances." *Baker*, 2010 UT 18, ¶ 17, 229 P.3d 650. Instead, "[t]he reasonableness of a detention should be evaluated on the basis of the totality of the circumstances facing the officer, not on judicial second-guessing." *Worwood*, 2007 UT 47, ¶ 28, 164 P.3d 397.

¶ 11 Although Simons concedes that Deputy Luke was entitled to detain him while investigating his reasonable suspicion that the driver was intoxicated and in possession of the residue-filled baggies, Simons contends that Deputy Luke impermissibly expanded the length of the stop when he ceased investigating the driver to approach and question Simons. We disagree. While the record is unclear on the exact time it took for Deputy Luke to approach Simons, it indicates that Deputy Luke walked immediately from the driver's side to the passenger side and asked Simons if he had anything on his person that the officer should know about. In response to that single question, Simons immediately revealed that he had a pipe in his underwear. Under these circumstances, we are convinced that the question did not measurably extend the length of the traffic stop or render the overall duration of the stop unreasonable. *See Johnson*, 129

S.Ct. at 787–88 (concluding that questions directed to a passenger during a traffic stop designed to assess possible gang membership were not part of a consensual encounter, but also acknowledging that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop"); *see also State v. Wilkinson*, 2008 UT App 395, ¶ 9, 197 P.3d 96 (concluding that an officer's request for a canine unit, in the absence of reasonable suspicion, did not impermissibly expand the scope or duration of a passenger's detention, because to conclude that any deviation from the purpose of the stop constitutes an illegal seizure "would place untenable demands on officers on the street"). Therefore, we affirm the denial of Simons's motion to suppress.

¶ 12 Affirmed.

¶ 13 WE CONCUR: STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN, Judges.