*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

296 P.3d 721

**2013 UT 3**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Respondent,*

*v.*

MILO SIMONS,
*Defendant and Petitioner.*

No. 20110842
Filed January 25, 2013

On Certiorari to the Utah Court of Appeals

Fourth District, Provo Dep't
The Honorable James R. Taylor
No. 061404283

Attorneys:

John E. Swallow, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen.,
Salt Lake City, for respondent

Douglas J. Thompson, Provo, for petitioner

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
and JUSTICE DURHAM joined.

JUSTICE LEE filed a concurring opinion.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1    On certiorari, petitioner Milo Simons asks us to determine whether the court of appeals erred in affirming the district court's denial of his motion to suppress evidence on Fourth Amendment grounds. Simons, a passenger in a vehicle stopped for a traffic infraction, was arrested for possession of methamphetamine after being questioned and searched by Deputy Sheriff John Luke. Simons unsuccessfully moved to suppress the fruits of the search in the district court and then unsuccessfully appealed to the court of appeals.

¶2    Simons argues the court of appeals erred in affirming the district court because Deputy Luke improperly extended the length of a detention that began as a routine traffic stop without any reasonable suspicion that Simons was engaged in criminal activity. The State counters that Deputy Luke's investigation was proper because he had reasonable suspicion to question Simons. The State alternatively argues that Deputy Luke did not impermissibly extend the duration of the detention when he asked Simons a single question in the midst of Deputy Luke's investigation of the driver.

¶3    We hold that Deputy Luke's questioning of Simons, during which Simons admitted to possession of illegal drugs and paraphernalia, was proper based on Deputy Luke's reasonable suspicion occasioned by the driver's likely impairment and the presence of used drug paraphernalia in plain sight. We further hold that Deputy Luke did not improperly extend the duration of Simons detention because Deputy Luke's single question to Simons resulted in only a de minimis extension of the otherwise lawful detention.

## BACKGROUND

¶4    "Because the legal analysis of a search and seizure case is highly fact dependent, we recite the facts in detail."[1] *State v. Hansen*, 2002 UT 125, ¶ 5, 63 P.3d 650 (citation omitted) (internal quotation marks omitted). On October 12, 2006, Deputy Sheriff John Luke was on patrol with a deputy-in-training, Deputy Thomas. While patrolling SR-77 near Springville, the deputies saw a car traveling ten miles above the speed limit. The deputies paced the car and ran a records check. After determining the car was uninsured, Deputy Thomas initiated a traffic stop and made contact with the driver, Kevin Sorensen. Deputy Luke approached the passenger side of the vehicle.

¶5    After Deputy Thomas spoke with Sorensen, the deputies conferred at the front of the patrol car. Deputy Luke then approached the driver's side of the vehicle to collect Sorensen's license and registration. Although he did not smell alcohol, Deputy Luke believed Sorensen was impaired because "[Sorensen] had very watery eyes that were bloodshot [and] . . . [h]e had very rapid speech[,] movement[,] . . . [and] body language." When Deputy Luke returned to his patrol car to conduct a records check, he

---

[1] We recite the facts based on testimony offered at a preliminary hearing conducted in the Fourth District Court before Judge James R. Taylor.

observed that Sorensen's "movements [were] . . . very agitated. He moved constantly touching his mirror several times, moving his head several times." Deputy Luke determined that Sorensen's continued erratic behavior "was a possible sign of impairment."

¶6 When Deputy Luke reapproached the driver's side of the vehicle, he testified that "Sorensen . . . forced his face towards the window . . . [and] blurted [] out . . . I'm not drunk, I haven't been drinking, look at my eyes." Deputy Luke then ordered Sorensen out of the vehicle to check for intoxication. As Sorensen exited the vehicle, Deputy Luke saw in the driver's side door compartment several "baggies that had been chewed on." Based on his experience and the presence of a "white powder of a small crystal residue" in at least one of the baggies, Deputy Luke believed the baggies to be drug paraphernalia.

¶7 While Deputy Luke was investigating his suspicion of Sorensen's impairment, he briefly turned his attention to Simons based on Deputy Luke's belief that both men were involved in illegal drug use. Deputy Luke "explained to [Simons] that [he] had found paraphernalia in the car and asked [Simons] if he had anything on his person [Deputy Luke] need[ed] to know about." Simons admitted to having a pipe in his underwear and, at Deputy Luke's command, shook a methamphetamine pipe from his pants. The deputies then continued with Sorensen's arrest, finding methamphetamine in a search incident to arrest. Shortly after the completion of Sorensen's arrest, Simons told Deputy Luke that "he had some [methamphetamine] in his pocket." The deputies thereafter arrested Simons.

¶8 Simons was charged with possession of drug paraphernalia and possession of a controlled substance. He moved to suppress the evidence obtained during the traffic stop, alleging violations of the Fourth Amendment to the United States Constitution and Article I, section 14 of the Utah Constitution. The district court denied the motion, ruling that evidence of used drug paraphernalia in plain sight, "coupled with the signs of possible impairment [of the driver,] le[]d to a reasonable suspicion and concern about both occupants of the car." Simons subsequently entered a conditional guilty plea to possession of a controlled substance[2] and was sentenced to a

_____

[2] In doing so, Mr. Simons reserved his right to appeal the denial of his motion to suppress. *See State v. Sery*, 758 P.2d 935, 939 (Utah

(continued...)

suspended prison term of five years with thirty-six months probation.

¶9    Simons timely appealed and the court of appeals affirmed the district court's denial of his motion to suppress. *State v. Simons*, 2011 UT App 251, ¶ 11, 262 P.3d 53. The appellate court found that it "need not determine whether Deputy Luke's questioning of Simons was supported by reasonable suspicion" as the district court had concluded. *Id.* ¶ 6. Rather, it held that because Deputy Luke's inquiry "did not measurably extend the length of the traffic stop or render the overall duration of the stop unreasonable," the inquiry was constitutional. *Id.* ¶ 11.

¶10    We granted certiorari on the issue of whether the court of appeals erred in affirming the district court's denial of Simons's motion to suppress evidence on Fourth Amendment grounds. We affirm the court of appeals' holding that the district court's denial of Simons's motion to suppress was proper. Deputy Luke's investigation of Simons was supported by his reasonable suspicion that Simons was engaged in criminal activity based on the chewed baggies and Sorensen's apparent impairment. Additionally, Deputy Luke's solitary question to Simons did not unconstitutionally extend the duration of the stop.

## STANDARD OF REVIEW

¶11    "On certiorari, we review the decision of the court of appeals and not that of the district court." *State v. Brake*, 2004 UT 95, ¶ 11, 103 P.3d 699. We review "the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Baker*, 2010 UT 18, ¶ 7, 229 P.3d 650. "[B]ecause there must be state-wide standards that guide law enforcement and prosecutorial officials," *State v. Hansen*, 2002 UT 125, ¶ 26, 63 P.3d 650 (internal quotation marks omitted), we afford no deference to the district court's "application of law to the underlying factual findings in search and seizure cases." *Brake*, 2004 UT 95, ¶ 15.

¶12    Because this case turns, in part, on the presence or absence of reasonable suspicion, we state the legal standard under which it is reviewed. Though reasonable suspicion "is highly fact dependent and the fact patterns are quite variable," the determination that reasonable suspicion exists is not a factual one. *State v. Chapman*, 921

---

[2] (...continued)
Ct. App. 1988).

P.2d 446, 450 (Utah 1996) (internal quotation marks omitted). Rather, "whether a particular set of facts gives rise to reasonable suspicion is a question of law, which [we] review[] for correctness." *Id.*

## ANALYSIS

### I. SIMONS'S INITIAL DETENTION WAS PROPER

¶13 We begin our analysis with Simons's initial detention stemming from Sorensen's traffic violation. Simons argues that his detention was unconstitutional under the Fourth Amendment to the United States Constitution and Article I, section 14 of the Utah Constitution. Under the primacy doctrine, "[t]he fact that the state and federal constitutional language is identical does not require a claimant to create some threshold for independent analysis of the state language. This court, not the United States Supreme Court, has the authority and obligation to interpret Utah's constitutional guarantees . . . ." *State v. Tiedemann*, 2007 UT 49, ¶ 33, 162 P.3d 1106. Unlike the petitioner in *Tiedemann*, however, Simons did not "clearly raise[] and extensively brief [his] state law claims." *Id.* ¶ 32. In fact, Simons does not present any support for his claim under Article I, section 14 of the Utah Constitution. We therefore review the constitutionality of the detention only under the Fourth Amendment to the United States Constitution. *See* U.S. CONST. amend. IV (applied to the states through the Fourteenth Amendment).

¶14 The Fourth Amendment protects United States citizens from "unreasonable searches and seizures." *Id.* "Although police must have a warrant to conduct most searches and seizures, officers may temporarily detain a vehicle and its occupants upon reasonable suspicion of criminal activity for the purpose of conducting a limited investigation of the suspicion." *State v. Baker*, 2010 UT 18, ¶ 11, 229 P.3d 650 (internal quotation marks omitted). Under the Fourth Amendment, we apply a two-part test to determine whether a traffic stop is reasonable. *Id.* ¶ 12. "The first step is to determine whether the police officer's action was justified at its inception." *Id.* (internal quotation marks omitted). If so, we proceed to the second step, where we "determine whether the detention following the stop was reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* (internal quotation marks omitted).

¶15 Simons concedes that Luke was justified in stopping the vehicle for a speeding violation. *See State v. Lopez*, 873 P.2d 1127, 1132 (Utah 1994) ("[A] police officer is constitutionally justified in

stopping a vehicle if the stop is incident to a traffic violation committed in the [officer's] presence." (internal quotation marks omitted)).  Once the deputies made contact with the driver, they were further justified in detaining Simons to "request [Sorensen's] driver's license and vehicle registration, conduct a computer check, and issue a citation." *State v. Hansen,* 2002 UT 125, ¶ 31, 63 P.3d 650; *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("The temporary seizure of the driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.").

¶16  Had the stop concluded with the issuance of a citation, "[a]ny further temporary detention for investigative questioning . . . [would have] constitute[d] an illegal seizure" unless the deputies developed, at minimum, "reasonable suspicion of a further illegality." *Hansen*, 2002 UT 125, ¶ 31 (internal quotation marks omitted).  Here, the vehicle occupants' continued detention was justified by Deputy Luke's reasonable suspicion that Sorensen was driving while impaired.

## II. SIMONS'S CONTINUED DETENTION WAS PROPER WHILE THE DEPUTIES INVESTIGATED SORENSEN'S POSSIBLE IMPAIRMENT

¶17  The length of a detention associated with a traffic stop can be properly extended "[i]f, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity." *State v. Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650.  In such a case, "the officer may . . . expediently investigate his new suspicion." *Id.*  But "officers must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly." *State v. Morris*, 2011 UT 40, ¶ 18, 259 P.3d 116 (internal quotation marks omitted).

¶18  Simons concedes that Deputy Luke "legitimately developed additional information that Sorensen may have been driving impaired . . . [and that] Simons'[s] further detention to facilitate [Deputy] Luke's investigation of Sorensen was justified." *See State v. Gettling*, 2010 UT 17, ¶ 5, 229 P.3d 647 ("If, during the course of a lawful traffic stop, an officer gains further suspicion that a vehicle occupant is engaged in illegal activity, the officer can detain the vehicle [and its occupants] further in order to investigate.").  Even though at this point Deputy Luke had no reasonable suspicion that Simons was engaged in criminal activity, Simons's continued detention was justified while Luke investigated Sorensen.

¶19  As part of his investigation of Sorensen, Deputy Luke

planned to conduct field sobriety tests. As Sorensen exited the car, Deputy Luke noticed, in plain view, "several baggies that had been chewed on," one of which contained "a white powder of a small crystal residue." Deputy Luke testified that, in his experience, those types of baggies were used to carry drugs, and based on the white powder inside, he suspected the baggies contained methamphetamine.

¶20 It was at this point that Deputy Luke turned his attention to Simons. The State argues that Deputy Luke's single question to Simons was proper because the presence of the chewed baggies, in combination with Sorensen's possible impairment, gave Deputy Luke reasonable suspicion to suspect that Simons "also possessed contraband or was otherwise involved in drug activity." Simons counters that these facts "[did] not justify [an] inference implicating Simons in any criminal conduct [nor did they] create reasonable suspicion to independently detain or investigate Simons." We agree with the State and hold that "the objective facts known to [Deputy Luke] and evaluated in light of [his] experience" gave rise to reasonable suspicion that Simons was engaged in drug activity. Deputy Luke's questioning of Simons was therefore justified by reasonable suspicion.

### III. DEPUTY LUKE'S QUESTION OF SIMONS WAS PROPER BASED ON REASONABLE SUSPICION

¶21 "[I]t is settled law that a police officer may detain and question an individual when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *State v. Markland*, 2005 UT 26, ¶ 10, 112 P.3d 507 (internal quotation marks omitted). To detain an individual under such circumstances, the "officer's suspicion must be supported by specific and articulable facts and rational inferences, and cannot be merely an inchoate and unparticularized suspicion or hunch." *Id.* (citation omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). Further, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274.

¶22 When reviewing a scenario to determine if reasonable suspicion justified an investigative detention, we "view the articulable facts in their totality . . . [and] judge the officer's conduct

in light of common sense and ordinary human experience." *Markland*, 2005 UT 26, ¶ 11 (internal quotation marks omitted). In so doing, we "accord deference to an officer's ability to distinguish between innocent and suspicious actions." *Id.* (citation omitted) (internal quotation marks omitted).

¶23 Here, the parties do not contest the objective facts apparent to Deputy Luke, or the order in which they occurred. The parties disagree, however, on whether Deputy Luke's observations were enough to constitute particularized reasonable suspicion with respect to Simons. We conclude that the presence in the car of multiple, chewed baggies, at least one of which contained a white powder, in addition to the driver's apparent impairment, gave rise to reasonable suspicion that Simons was using or possessed illegal drugs. Deputy Luke's question to Simons was, therefore, constitutional. Our conclusion comports with both the precedent of the United States Supreme Court and with our own recent search and seizure cases.

¶24 In *Maryland v. Pringle*, the Court held that an officer had probable cause to believe that a front-seat passenger illegally possessed cocaine when that cocaine was found hidden behind the back-seat armrest of the vehicle in which he was travelling with two others. 540 U.S. 366 (2003). The Court began by stating, "It is uncontested [that] . . . upon recovering the five . . . baggies . . . [the officer] had probable cause to believe a felony had been committed." *Id.* at 370. The Court answered in the affirmative the question of whether "the officer had probable cause to believe that [the defendant] committed that crime." *Id.* It found that because none of the occupants claimed ownership, "[t]he quantity of drugs and cash in the car indicated the likelihood of drug dealing," and found that it was "reasonable for the officer to infer a common enterprise." *Id.* at 373.

¶25 The Court explicitly distinguished its analysis in *Pringle* with that in *Ybarra v. Illinois*. 444 U.S. 85 (1979). In *Ybarra*, the Court held that a search warrant authorizing the search of a public tavern and its barkeep did not permit officers to search a tavern patron without reasonable belief that the patron was armed and dangerous or involved in criminal activity. 444 U.S. at 92–94. The Court reasoned that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91. In contrast, the *Pringle* Court highlighted the fact that "Pringle and his two companions were in a relatively small automobile, not a public

tavern." *Pringle*, 540 U.S. at 373. The Court reasoned that a "car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* (internal quotation marks omitted).

¶26 Though the facts in *Pringle* differ somewhat from those here, its analysis is nonetheless instructive. First, the *Pringle* Court implicitly recognized that an officer confronted with the discovery of drugs in a car may at least question the driver and passengers regarding the presence of those drugs. Thus, Deputy Luke was justified in questioning Simons regarding the presence of drugs and paraphernalia. In answer to Deputy Luke's one question, Simons admitted possession of drug paraphernalia. This admission gave Deputy Luke independent probable cause to permissibly extend Simons detention. Just as the presence of drugs in the car in which Pringle was an occupant gave rise to probable cause that Pringle was guilty of possession, the presence of used drug paraphernalia in the car driven by Sorensen gave rise to a reasonable suspicion that he or Simons or both men possessed or were using illegal drugs.

¶27 Though the contraband in each case was different, the actions of the officers in both cases were concomitant with the evidence. *See State v. Morris*, 2011 UT 40, ¶ 29, 259 P.3d 116 ("The standard for reasonable suspicion is relatively low. Indeed, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." (internal quotation marks omitted)).

¶28 Our holding that Deputy Luke's question of Simons was supported by reasonable suspicion likewise aligns with our conclusion that there was reasonable suspicion of drug activity in our recent opinion in *State v. Baker*. 2010 UT 18, 229 P.3d 650. Though the outcome of *Baker* turned on the determination that officers found the evidence giving rise to reasonable suspicion only after they had improperly extended the duration of the traffic stop for a dog sniff, we reasoned in that case that the officers had reasonable suspicion of drug possession because "the license of the driver had been suspended for drugs and that [the dog] sniff had revealed the presence of narcotics in the vehicle." *Id.* ¶ 52. As in the present case, Baker was a passenger in a car stopped for a routine traffic violation and gave no independent signs that he was impaired by or possessed drugs. *See id.* ¶ 3. But we concluded that the officers' reasonable suspicion was nonetheless justified by the likely

presence of drugs in the car and knowledge of the driver's drug history. *Id.* ¶ 52. Just as such evidence was enough to give rise to the officers' reasonable suspicion in *Baker*, the presence of chewed baggies containing white powder and Sorensen's apparent impairment provide the requisite evidence for a finding of reasonable suspicion in this case.

## IV. DEPUTY LUKE'S ONE BRIEF QUESTION TO SIMONS DID NOT UNCONSTITUTIONALLY EXTEND THE DETENTION

¶29 While we uphold Deputy Luke's questioning of Simons based on the existence of reasonable suspicion, the fact that Deputy Luke's question resulted in only a de minimis extension of the stop provides an alternative basis for upholding the constitutional validity of the search. Under the controlling Supreme Court precedent of *Arizona v. Johnson*, Deputy Luke's single question did not improperly extend Simons's detention. 555 U.S. 323 (2009). Where Deputy Luke diligently pursued his investigation of Sorensen's apparent impairment and his "inquir[y] [of Simons] d[id] not measurably extend the duration of the stop," it passes constitutional muster under the Fourth Amendment. *Id.* at 333.

¶30 The Court in *Johnson* held that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.* (finding that an officer's unrelated questions leading to the arrest of a back-seat passenger originally detained as part of a traffic stop were proper). The Court did not, however, elucidate the length of time or the number of questions that would "measurably extend the duration of the stop." *Id.* This direction lacking, we are reminded that "the touchstone of the Fourth Amendment is reasonableness . . . [which] is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (citation omitted) (internal quotation marks omitted); *see also State v. Baker*, 2010 UT 18, ¶ 17, 229 P.3d 650 ("There is no bright-line test that indicates an appropriate length for a traffic-stop detention; rather, we consider the totality of the circumstances surrounding the stop to determine whether the length and scope of the detention were reasonable.").

¶31 While we have yet to consider the scope of the de minimis extension doctrine articulated by the Court in *Johnson*, federal circuit courts applying *Johnson* provide some direction. For instance, the

United States Court of Appeals for the Sixth Circuit held that an officer's single question about the possession of firearms or drugs "did not render the traffic stop [for a minor infraction] an unreasonable seizure under the Fourth Amendment." *United States v. Everett*, 601 F.3d 484, 496 (6th Cir. 2010). The Court reasoned that "[i]t cannot be said that this single question . . . constituted a *definitive* abandonment of the prosecution of the traffic stop in favor of a *sustained* investigation into drug or firearm offenses. Nor did this single question, taking [only] seconds, constitute the bulk of the interaction . . . ." *Id.* at 495 (footnote omitted); *see also United States v. Dixie*, 382 Fed. Appx. 517, 519–20 (7th Cir. 2010) (holding that an officer's single, unrelated question regarding weapons that took "only seconds" did not unreasonably extend traffic stop).

¶32 Similarly, the United States Court of Appeals for the Fourth Circuit in *United States v. Mason* held that an officer did not unconstitutionally prolong a traffic stop when the officer asked one to one and a half minutes worth of questions unrelated to the purpose of the original traffic stop, some of which were directed at the passenger. 628 F.3d 123, 131–33 (4th Cir. 2010). The court reasoned that, under *Johnson*, "[an] officer may briefly ask questions unrelated to the stop. For instance, [the question] 'How 'bout them Georgia Bulldogs?' do[es] not implicate the Fourth Amendment, provided that the unrelated questioning does not extend the encounter beyond the period reasonably necessary to effectuate the purposes of the lawful detention." *Id.* at 131. But the court made clear that "a traffic stop may not be extended beyond the time reasonably necessary to effectuate the stop, absent reasonable suspicion justifying further detention . . . ." *Id.* at 132 (emphasis omitted). *See also United States v. Stepp*, 680 F.3d 651, 663 (6th Cir. 2012) (noting that a "dog sniff may render an otherwise lawful seizure unlawful . . . if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop"); *United States v. Macias*, 658 F.3d 509, 518 (5th Cir. 2011) (stating that "an officer can ask unrelated questions that [measurably] extend the duration of the stop if—but only if—the officer has reasonable suspicion sufficient to support the continued detention" (internal quotation marks omitted)).

¶33 The facts in *United States v. Digiovanni* are particularly helpful in defining the parameters of the de minimis extension doctrine recognized in *Johnson*. In *Digiovanni*, the United States Court of Appeals for the Fourth Circuit declared an officer's "extensive and time-consuming" unrelated questioning, absent

reasonable suspicion, to be unconstitutional. 650 F.3d 498, 510 (4th Cir. 2011). "The record . . . ma[de] clear that at just about every turn [the officer] was conducting a drug investigation instead of a traffic infraction investigation." *Id.* Recognizing that *Johnson* allows some unrelated questioning, the court found that the officer's "actions and questions . . . besp[oke] an utter lack of diligence" in pursuing the original purpose of the traffic stop. *Id.* citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985), the *Digiovanni* court made clear that an officer "must diligently pursue the investigation of the justification for the [original] stop." 650 F.3d at 509. Though officers are "not require[d] . . . to move at top speed . . . the officer's overall course of action during a traffic stop, viewed objectively and in its totality, [must be] reasonably directed toward the proper ends of the stop." *Everett*, 601 F.3d at 495 (citation omitted) (internal quotation marks omitted).

¶34 The analysis of whether an officer diligently pursued the original purpose of a stop is necessarily a fact-bound inquiry. And on the facts before us, we cannot say that Deputy Luke's single question was improper. The question, "[Do you] ha[ve] anything on [your] person I need to know about?" lasted only seconds and did not measurably extend the duration of the detention. Had Deputy Luke abandoned his investigation of Sorensen or focused the bulk of his investigation on Simons without reasonable suspicion, the outcome of this analysis would likely be different. But those are not the facts presented here.

¶35 Although *Johnson* allows for a de minimis extension at any point before the conclusion of an otherwise lawful detention, we pause to clarify "that once the lawful purpose of the stop has concluded, the occupants of the vehicle must be released from their temporary seizure." *Baker*, 2010 UT 18, ¶ 17. When the lawful purpose of the stop has concluded, whether at the issuance of a warning or a ticket, or with the arrest or dismissal of the detainee, any further questioning, investigation, or detention requires reasonable suspicion and is subject to fresh scrutiny under the Fourth Amendment.[3]

---

[3] This requirement accords with our holdings in *State v. Hansen*, 2002 UT 125, 63 P.3d 650; *State v. Gettling*, 2010 UT 17, 229 P.3d 647; *State v. Baker*, 2010 UT 18, 229 P.3d 650; and *State v. Morris*, 2011 UT 40, 259 P.3d 116. In *Hansen*, the officer's unrelated question was

(continued...)

¶36 We do not suggest that an officer must limit his off-topic inquiries to the middle of an otherwise lawful detention, rather than as such a stop comes to a close. Within the confines of an otherwise lawful stop, "the touchstone of the Fourth Amendment is reasonableness." *Robinette*, 519 U.S. at 39 (internal quotation marks omitted). But, "the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Johnson*, 555 U.S. at 333. Because an officer controls both the direction and duration of a stop, once the officer concludes his investigation and terminates the stop, he cannot reinitiate the stop without renewed reasonable suspicion.[4]

---

[3] (...continued)
unconstitutional because "the purpose for the initial traffic stop was concluded" and the officer did not have reasonable suspicion of further criminal activity. 2002 UT 125, ¶ 32. The dog sniffs in *Gettling* and *Baker* were similarly improper because they occurred after the original, lawful purpose of the stops had concluded and there was no reasonable suspicion of additional criminal activity prior to the dog sniffs. *Gettling*, 2010 UT 17, ¶ 6; *Baker*, 2010 UT 18, ¶ 58. Finally, in *Morris* we held that if an officer, "acting in good faith[,] is reasonably mistaken about the grounds for a traffic stop," he may explain his mistake to the driver. 2011 UT 40, ¶ 1. But we made clear that officers must then end the stop unless "new reasonable suspicion of criminal activity *immediately* arises that justifies further detention." *Id.* ¶ 25.

[4] The Court's holding in *Arizona v. Johnson* was based on the notion that courts should not micromanage an officer's control of a traffic stop. 555 U.S. 323 (2009). It did not erase the constitutional limitations that bracket such a traffic stop. Rather, the Court noted that "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Id.* at 333. Reasonable suspicion of a traffic violation or other illegality, at a minimum, is necessary for officers to initially detain a motorist. And the Court continued, stating, "[t]he temporary seizure of driver and passengers ordinarily continues, and remains reasonable," only "for the duration of the stop." *Id.* The Court did not suggest that an officer could detain and investigate a motorist without reasonable suspicion after a stop ends, when an officer has "no further need to control the scene." *Id.* The Court's holding in *Johnson* therefore allows a de minimus extension during a stop, even as such a stop is winding
(continued...)

¶37 To reinitiate a concluded stop, an officer is required to demonstrate reasonable suspicion, just as when the officer initiated the original stop. The requirement of reasonable suspicion to initiate a stop, or to reinitiate a concluded stop, cannot be supplanted by the Fourth Amendment's reasonableness analysis appropriate within the context of the stop itself. Therefore, when an officer concludes a stop, a detained motorist regains the full constitutional protection of all other motorists of whom the officer does not have a reasonable suspicion.[5]

¶38 While we recognize that a de minimis extension of a traffic stop is not unconstitutional, we do not create a bright-line rule governing the acceptable temporal duration of such a stop. Rather, we hold only that officers must diligently pursue the original purpose of the stop, and that while some unrelated questioning may be tolerated, officers must remain focused on the original purpose of the stop in the absence of reasonable suspicion justifying an expanded investigation. Once officers complete the purpose of the original stop and dispel any reasonable suspicion generated during its pendency, they are then obligated to release the vehicle and its occupants without delay.

---

[4] (...continued)
down, but it does not preclude the necessity of reasonable suspicion to initiate a stop or reinitiate a concluded stop.

[5] The suggestion that an officer's inquiries occurring after the conclusion of a lawful stop are transformed into a voluntary interaction rests on the questionable assumption that motorists are certain of the duration of their original detainment. Precisely because "officers . . . exercise unquestioned command of the situation," *Johnson*, 555 U.S. at 330 (internal quotation marks omitted), "a traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will," *id.* at 333. Nor would a motorist realize that his or her detainment has transitioned into a voluntary interaction until an officer "inform[s] the driver and passengers they are free to leave." *Id.* In light of such "unquestioned command," officers are free to pursue their investigation during the pendency of a stop, even when that investigation entails a de minimis extension, but they are required to demonstrate reasonable suspicion to further detain a motorist after the conclusion of the original, lawful detention.

**CONCLUSION**

¶39 The court of appeals correctly affirmed the district court's denial of Simons motion to suppress for two reasons. First, Deputy Luke had reasonable suspicion to lawfully detain Simons. Second, Deputy Luke's single question to Simons was independently justified because this brief inquiry did not measurably extend Simons's otherwise lawful detention.

---

JUSTICE LEE, concurring in part and concurring in the judgment:

¶40 I concur in the judgment of the court and in the bulk of its analysis. As Justice Parrish's majority opinion indicates, the touchstone under the Fourth Amendment is reasonableness, and that standard affords flexibility—not rigid time constraints—for analysis of the constitutional length of a traffic stop. *Supra* ¶ 30. And the reasonable breathing space afforded under the constitution likewise leaves room for traffic stop extensions that are de minimis in length but not independently justified by reasonable suspicion. *Supra* ¶¶ 31–34. Otherwise, the constitution would be implicated by such commonplace acts as a police officer's small talk or rumination about the weather. *See supra* ¶ 32 (citing *United States v. Mason*, 628 F.3d 123, 131 (4th Cir. 2010), for the proposition that the question "'How 'bout them Georgia Bulldogs?' do[es] not implicate the Fourth Amendment").

¶41 I therefore agree with the majority's decision affirming the denial of Simons's motion to suppress, as the extension of the traffic stop in this case was minimal in length (and was, alternatively, justified by reasonable suspicion in any event, *supra* ¶¶ 21–28). I disagree, however, with the court's assertion that the breathing space for the length of a traffic stop somehow ends when the "lawful purpose of the stop has concluded" by "issuance of a warning or a ticket" or the "arrest or dismissal of the detainee." *Supra* ¶ 35. Thus, I would not hold that after such "conclusion" of a stop "*any* [even de minimis] further questioning, investigation, or detention requires reasonable suspicion." *Supra* ¶ 35 (emphasis added).

¶42 That dictum preserves elements of our prior case law.[1] But

---

[1] *See State v. Hansen*, 2002 UT 125, ¶ 31, 63 P.3d 650 ("Once the purpose of the initial stop is concluded . . . the person must be allowed to depart. Any further temporary detention for investigative questioning after [fulfilling] the purpose for the initial traffic stop

(continued...)

it is incompatible with the reasonableness criterion of the Fourth Amendment as articulated by the U.S. Supreme Court, and it has been overtaken by subsequent authority in this court (including the logic of our opinion today). I would accordingly disavow the language in our prior cases that purports to foreclose even de minimis extensions beyond the lawful conclusion of a traffic stop.

¶43  As the majority explains, *Arizona v. Johnson*, 555 U.S. 323, 333 (2009), elucidates the constitution's reach in cases involving "[a]n officer's inquiries into matters unrelated to the justification for [a] traffic stop." *See supra* ¶¶ 29–30. It clarifies that such inquiries implicate Fourth Amendment concerns only to the extent they extend the duration of the stop. *Johnson*, 555 U.S. at 333. Thus, collateral inquiries "do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id.*

¶44 The court's opinion today appropriately clarifies the standard for determining whether an inquiry "measurably extend[s]" a traffic stop. Reasoning from the Fourth Amendment's touchstone of reasonableness and citing case law in this and other jurisdictions, the majority rightly concludes that mere de minimis extensions survive constitutional scrutiny despite a lack of reasonable suspicion for the inquiry leading to the extension. *Supra* ¶ 29. That analysis, however, is logically incompatible with the court's denial of de minimis breathing room at the back end of a traffic stop. If the reasonableness criterion of the Fourth Amendment leaves flexibility for de minimis extensions during the course of a

---

[1] (...continued)
constitutes an illegal seizure, unless an officer has probable cause or a reasonable suspicion of a further illegality" (second alteration in original) (internal quotation marks omitted)); *State v. Gettling*, 2010 UT 17, ¶¶ 5–7, 229 P.3d 647 (declining to "adopt *any* de minimis exception to a passenger's Fourth Amendment rights in order to allow officers to conduct a canine sniff after the lawful purpose of the stop has concluded" because "[w]hen officers have concluded their investigation of their initial suspicion and any further suspicion that arose during the stop, they are required to end the detention" (emphasis added)); *State v. Baker*, 2010 UT 18, ¶ 31, 229 P.3d 650 (concluding that "*any* detention of an individual after the purpose for the initial detention has concluded violates the Fourth Amendment" (emphasis added)).

traffic stop, it must likewise preserve such room as the stop comes to a close.

¶45 That was the essence of our recent holding in *State v. Morris*, 2011 UT 40, ¶ 25, 259 P.3d 116. There the basis for the traffic stop—an apparently missing license plate—disappeared when the officer noticed a temporary registration tag as he was pulling the vehicle over. *Id*.¶ 4. Yet although at that point the "lawful purpose of the stop ha[d] concluded," *supra* ¶ 35, we nonetheless upheld the officer's further extension of the stop to allow him to provide a brief explanation of why he had initiated the stop. *Morris*, 2011 UT 40, ¶¶ 25–26. By implication, our *Morris* decision embraced a notion of de minimis breathing space at the back end of a traffic stop. Otherwise, we could not have upheld the officer's further detention of the vehicle, which resulted from an inquiry that took place after the "lawful purpose of the stop ha[d] concluded." *Supra* ¶ 35.

¶46 *Morris* is irreconcilable with the majority's dictum foreclosing "*any* further questioning, investigation, or detention" after the lawful purpose of the stop has ended. *Supra* ¶ 35 (emphasis added). Clearly there was further detention in *Morris* after the stop's lawful purpose ended. And yet we upheld it against a Fourth Amendment challenge—in a manner necessarily (if implicitly) leaving room for de minimis extension of a traffic stop beyond its lawful termination.

¶47 Presumably the court today is not overruling *Morris*. Perhaps it finds that case distinguishable on its facts—on the ground, for example, that the detained driver in *Morris* may have been uncertain whether the stop had in fact terminated or whether he was indeed free to leave. But that will often be true in cases of this nature, and that and other uncertainties are good reasons not to establish a hard-and-fast rule against *any* further detention after the stop has ended.

¶48 Consider a hypothetical variation on the facts of this case, in which Deputy Luke hands the driver his license and registration and a speeding ticket while stating, "here you go, drive safely . . . but before you do I'm wondering whether there's anything else I should know about." The length of the extension of the stop in the hypothetical is equal to the one in the actual case, so both extensions should withstand constitutional scrutiny if the question is simply the reasonableness of the delay. But under the majority's dictum, the hypothetical extension is constitutionally problematic, as it comes after the lawful purpose of the stop had ended. That is troubling. I

see no difference between the hypothetical and the actual case, or at least no difference of any constitutional significance.

¶49 In the hypothetical scenario, the vehicle's occupants could have one of two possible reactions to the officer's statements. One reaction would be to conclude that the traffic stop is not really at an end, given the immediacy of the follow-up question about "anything else." In that event the case would look a lot like the scenario in *Morris*, in which an extension would be justified because it is de minimis in nature and not otherwise unreasonable. If, on the other hand, the vehicle occupants reacted by genuinely perceiving the vehicle stop to be at an end (and the further inquiry to be gratuitous small talk), then they would necessarily conclude that they were free to leave. And in that event any further inquiry would not be a detention, but a voluntary interaction.[2] Either way, there is nothing constitutionally problematic about a de minimis extension that comes after an *arguable* termination of the stop — unless the extension is more than de minimis and thus unreasonable, which is the dispositive question under the Fourth Amendment.

¶50 Today's hard-and-fast rule against *any* extensions beyond the conclusion of the lawful basis of the stop misses the constitutional mark. Instead of focusing on the reasonableness of any detention, this dictum will require the courts to referee a fuzzy line going forward — a line designating the formal conclusion of a stop for Fourth Amendment purposes. I would avoid drawing such a line because it is unworkable and, more importantly, because it is not the line prescribed by the constitution.

¶51 I would likewise repudiate the language in our recent precedents articulating this rule.[3] Doing so would not require a disavowal of the holdings of these cases, however. In *Baker* and *Gettling*, after all, we ultimately upheld the traffic stops at issue under the good-faith exception to the exclusionary rule, *see State v.*

---

[2] *See Hansen,* 2002 UT 125, ¶ 37 ("While a traffic stop may begin as an investigatory detention, it is possible for it to de-escalate to a consensual encounter. Since a consensual encounter is not a seizure, questioning during such an encounter is lawful, regardless of scope, as long as the person remains a willing participant." (citations omitted)); *see also State v. Alverez*, 2006 UT 61, ¶ 10, 147 P.3d 425 (noting that consensual encounters are not seizures under the Fourth Amendment).

[3] *See supra* ¶ 42 n.1.

*Baker*, 2010 UT 18, ¶¶ 35–40, 229 P.3d 650; *State v. Gettling*, 2010 UT 17, ¶ 8, 229 P.3d 647, so our statements requiring a bright-line end of the detention at the conclusion of a stop were unnecessary. And even *State v. Hansen*, 2002 UT 125, 63 P.3d 650, is consistent with the de minimis standard articulated by the court today. There the extension of the traffic stop not only came after the officer returned the motorist's license and registration; it was also quite extensive (and hardly de minimis), in that it involved not just a single question about alcohol, drugs, or weapons (which was answered in the negative) but further pestering culminating in a request for a search of the vehicle for these items. *Id.* ¶¶ 12–15. Such questioning and ensuing search would hardly be de minimis, so our conclusion that the detention was extended unreasonably was correct—and consistent with the de minimis standard that flows from the reasonableness criterion of the Fourth Amendment.

¶52 We should recast the holdings of our prior cases in these terms and disavow their dicta as overtaken by subsequent authority. I disagree with the portion of the court's decision reinforcing the notion of a hard prohibition on any further detention after the end of a traffic stop, and would affirm in this case without cementing that problematic position in our case law.