Justice PARRISH,
opinion of the Court:
INTRODUCTION
T1 On certiorari, Petitioner Milo Simons asks us to determine whether the court of appeals erred in affirming the district court's denial of his motion to suppress evidence on Fourth Amendment grounds. Simons, a passenger in a vehicle stopped for a traffic infraction, was arrested for possession of methamphetamine after being questioned and searched by Deputy Sheriff John Luke. Si-mons unsuccessfully moved to suppress the fruits of the search in the district court and then unsuccessfully appealed to the court of appeals.
T2 Simons argues the court of appeals erred in affirming the district court because Deputy Luke improperly extended the length of a detention that began as a routine traffic stop without any reasonable suspicion that Simons was engaged in criminal activity. The State counters that Deputy Luke's investigation was proper because he had reasonable suspicion to question Simons. The State alternatively argues that Deputy Luke did not impermissibly extend the duration of the detention when he asked Simons a single question in the midst of Deputy Luke's investigation of the driver.
T3 We hold that Deputy Luke's questioning of Simons, during which Simons admitted to possession of illegal drugs and paraphernalia, was proper based on Deputy Luke's reasonable suspicion occasioned by the driver's likely impairment and the presence of used drug paraphernalia in plain sight,. We further hold that Deputy Luke did not improperly extend the duration of Simons detention because Deputy Luke's single question to Simons resulted in only a de minimis extension of the otherwise lawful detention.
BACKGROUND
1 4 "Because the legal analysis of a search and seizure case is highly fact dependent, we recite the facts in detail." [1] State v. Hansen, 2002 UT 125, 15, 68 P.3d 650 (citation omitted) (internal quotation marks omitted). On October 12, 2006, Deputy Sheriff John Luke was on patrol with a deputy-in-training, Deputy Thomas. While patrolling SR-77 near Springville, the deputies saw a car traveling ten miles above the speed limit, The deputies paced the car and ran a records check. After determining the car was uninsured, Deputy Thomas initiated a traffic stop and made contact with the driver, Kevin Soren-sen. Deputy Luke approached the passenger side of the vehicle.
15 After Deputy Thomas spoke with Sor-ensen, the deputies conferred at the front of the patrol car. Deputy Luke then approached the driver's side of the vehicle to collect Sorensen's license and registration. Although he did not smell aleohol, Deputy Luke believed Sorensen was impaired because "[Sorensen] had very watery eyes that were bloodshot [and] ... [hle had very rapid speech[,] movement{,] ... [and] body language." When Deputy Luke returned to his patrol car to conduct a records check, he observed that Sorensen's "movements [were] . very agitated. He moved constantly touching his mirror several times, moving his head several times." Deputy Luke determined that Sorensen's continued erratic behavior "was a possible sign of impairment."
*725 16 When Deputy Luke reapproached the driver's side of the vehicle, he testified that "Sorensen ... forced his face towards the window ... [and] blurted [] out ... I'm not drunk, I haven't been drinking, look at my eyes." Deputy Luke then ordered Sorensen out of the vehicle to check for intoxication. As Sorensen exited the vehicle, Deputy Luke saw in the driver's side door compartment several "baggies that had been chewed on." Based on his experience and the presence of a "white powder of a small erystal residue" in at least one of the baggies, Deputy Luke believed the baggies to be drug paraphernalia.
17 While Deputy Luke was investigating his suspicion of Sorensen's impairment, he briefly turned his attention to Simons based on Deputy Luke's belief that both men were involved in illegal drug use. Deputy Luke "explained to [Simons] that [he] had found paraphernalia in the car and asked [Simons] if he had anything on his person [Deputy Luke] need[ed] to know about." Simons admitted to having a pipe in his underwear and, at Deputy Luke's command, shook a methamphetamine pipe from his pants. The deputies then continued with Sorensen's arrest, finding methamphetamine in a search incident to arrest. Shortly after the completion of Sorensen's arrest, Simons told Deputy Luke that "he had some [methamphetamine] in his pocket." The deputies thereafter arrested Simons.
1 8 Simons was charged with possession of drug paraphernalia and possession of a controlled substance. He moved to suppress the evidence obtained during the traffic stop, alleging violations of the Fourth Amendment to the United States Constitution and Article I, section 14 of the Utah Constitution. The district court denied the motion, ruling that evidence of used drug paraphernalia in plain sight, "coupled with the signs of possible impairment [of the driver,] le[ ]d to a reasonable suspicion and concern about both cceu-pants of the car." Simons subsequently entered a conditional guilty plea to possession of a controlled substance [2] and was sentenced to a suspended prison term of five years with thirty-six months probation.
T9 Simons timely appealed and the court of appeals affirmed the district court's denial of his motion to suppress. State v. Simons, 2011 UT App 251, 111, 262 P.8d 53. The appellate court found that it "need not determine whether Deputy Luke's questioning of Simons was supported by reasonable suspicion" as the district court had concluded. Id. 16. Rather, it held that because Deputy Luke's inquiry "did not measurably extend the length of the traffic stop or render the overall duration of the stop unreasonable," the inquiry was constitutional. Id. 111.
10 We granted certiorari on the issue of whether the court of appeals erred in affirming the district court's denial of Simons's motion to suppress evidence on Fourth Amendment grounds. We affirm the court of appeals' holding that the district court's denial of Simons's motion to suppress was proper. Deputy Luke's investigation of Si-mons was supported by his reasonable suspi-clon that Simons was engaged in criminal activity based on the chewed baggies and Sorensen's apparent impairment. Additionally, Deputy Luke's solitary question to Si-mons did not unconstitutionally extend the duration of the stop.
STANDARD OF REVIEW
T11 "On certiorari, we review the decision of the court of appeals and not that of the district court." State v. Brake, 2004 UT 95, 111, 103 P.3d 699. We review "the decision of the court of appeals for correctness, giving no deference to its conclusions of law." State v. Baker, 2010 UT 18, 17, 229 P.3d 650. "[Blecause there must be statewide standards that guide law enforcement and prosecutorial officials," State v. Hansen, 2002 UT 125, 126, 63 P.3d 650 (internal quotation marks omitted), we afford no deference to the district court's "application of law to the underlying factual findings in search and seizure cases." Brake, 2004 UT 95, ¶ 15, 103 P.3d 699.
*726 112 Because this case turns, in part, on the presence or absence of reasonable suspicion, we state the legal standard under which it is reviewed. Though reasonable suspicion "is highly fact dependent and the fact patterns are quite variable," the determination that reasonable suspicion exists is not a factual one. State v. Chapman, 921 P.2d 446, 450 (Utah 1996) (internal quotation marks omitted). Rather, "whether a particular set of facts gives rise to reasonable suspicion is a question of law, which [we] review[ ] for correctness." Id.
ANALYSIS
I. SIMONS$ INITIAL DETENTION WAS PROPER
113 We begin our analysis with Simons's initial detention stemming from Sorensen's traffic violation. Simons argues that his detention was unconstitutional under the Fourth Amendment to the United States Constitution and Article I, section 14 of the Utah Constitution. Under the primacy doe-trine, "[the fact that the state and federal constitutional language is identical does not require a claimant to create some threshold for independent analysis of the state language. This court, not the United States Supreme Court, has the authority and obligation to interpret Utah's constitutional guarantees...." State v. Tiedemann, 2007 UT 49, 183, 162 P.3d 1106. Unlike the petitioner in Tiedemann, however, Simons did not "clearly raise[ ] and extensively brief [his] state law claims." Id. 132. In fact, Simons does not present any support for his claim under Article I, section 14 of the Utah Constitution. We therefore review the constitutionality of the detention only under the Fourth Amendment to the United States Constitution. See U.S. Const. amend. IV (applied to the states through the Fourteenth Amendment).
114 The Fourth Amendment protects United States citizens from "unreasonable searches and seizures." Id. "Although police must have a warrant to conduct most searches and seizures, officers may temporarily detain a vehicle and its occupants upon reasonable suspicion of criminal activity for the purpose of conducting a limited investigation of the suspicion." State v. Baker, 2010 UT 18, 111, 229 P.3d 650 (internal quotation marks omitted). Under the Fourth Amendment, we apply a two-part test to determine whether a traffic stop is reasonable. Id. 1112. "The first step is to determine whether the police officer's action was justified at its inception." Id. (internal quotation marks omitted). If so, we proceed to the second step, where we "determine whether the detention following the stop was reasonably related in scope to the cireumstances that justified the interference in the first place." Id. (internal quotation marks omitted).
$15 Simons concedes that Luke was justified in stopping the vehicle for a speeding violation. See State v. Lopez, 873 P.2d 1127, 1132 (Utah 1994) ("[A] police officer is constitutionally justified in stopping a vehicle if the stop is incident to a traffic violation committed in the [officer's] presence." (internal quotation marks omitted)). Once the deputies made contact with the driver, they were further justified in detaining Simons to "request [Sorensen's] driver's license and vehicle registration, conduct a computer check, and issue a citation." State v. Hansen, 2002 UT 125, 131, 68 P.3d 650; see also Arizona v. Johnson, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) ("The temporary seizure of the driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.").
1 16 Had the stop concluded with the issuance of a citation, "[alny further temporary detention for investigative questioning ... [would have] constitute[d] an illegal seizure" unless the deputies developed, at minimum, "reasonable suspicion of a further illegality." Hansen, 2002 UT 125, 131, 63 P.3d 650 {internal quotation marks omitted). Here, the vehicle occupants' continued detention was justified by Deputy Luke's reasonable suspicion that Sorensen was driving while impaired.
II. SIMONSS CONTINUED DETENTION WAS PROPER WHILE THE DEPUTIES INVESTIGATED SOR-ENSEN'S POSSIBLE IMPAIRMENT
$17 The length of a detention associated with a traffic stop can be properly *727 extended "[i}f, during the seope of the traffic stop, the officer forms new reasonable articu-lable suspicion of criminal activity." State v. Baker, 2010 UT 18, 118, 229 P.3d 650. In such a case, "the officer may ... expediently investigate his new suspicion." Id. But "officers must diligently pursue a means of investigation that is likely to confirm or dispel their suspicions quickly." State v. Morris, 2011 UT 40, 118, 259 P.3d 116 (internal quotation marks omitted).
118 Simons concedes that Deputy Luke "legitimately developed additional information that Sorensen may have been driving impaired ... [and that] Simonsg'[s] further detention to facilitate [Deputy] Luke's investigation of Sorensen was justified." See State v. Getting, 2010 UT 17, 15, 229 P.3d 647 ("If, during the course of a lawful traffic stop, an officer gains further suspicion that a vehicle occupant is engaged in illegal activity, the officer can detain the vehicle [and its occupants] further in order to investigate."). Even though at this point Deputy Luke had no reasonable suspicion that Simons was engaged in criminal activity, Simons's continued detention was justified while Luke investigated Sorensen.
1 19 As part of his investigation of Soren-sen, Deputy Luke planned to conduct field sobriety tests. As Sorensen exited the car, Deputy Luke noticed, in plain view, "several baggies that had been chewed on," one of which contained "a white powder of a small crystal residue." Deputy Luke testified that, in his experience, those types of baggies were used to carry drugs, and based on the white powder inside, he suspected the baggies contained methamphetamine.
T 20 It was at this point that Deputy Luke turned his attention to Simons. The State argues that Deputy Luke's single question to Simons was proper because the presence of the chewed baggies, in combination with Sor-ensen's possible impairment, gave Deputy Luke reasonable suspicion to suspect that Simons "also possessed contraband or was otherwise involved in drug activity." Simons counters that these facts "[did] not justify [an] inference implicating Simons in any criminal conduct [nor did they] create reasonable suspicion to independently detain or investigate Simons." We agree with the State and hold that "the objective facts known to [Deputy Luke] and evaluated in light of [his] experience" gave rise to reasonable suspicion that Simons was engaged in drug activity. Deputy Luke's questioning of Simons was therefore justified by reasonable suspicion.
III. DEPUTY LUKE'S QUESTION OF SIMONS WAS PROPER BASED ON REASONABLE SUSPICION
121 "[t is settled law that a police officer may detain and question an individual when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." State v. Markland, 2005 UT 26, 10, 112 P.3d 507 (internal quotation marks omitted). To detain an individual under such cireumstances, the "officer's suspicion must be supported by specific and articulable facts and rational inferences, and cannot be merely an inchoate and unparticularized suspicion or hunch." Id. (citation omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." United States v. Arvizu, 534 U.S. 266, 277, 122 S.Ct. 744, 151 LEd2d 740 (2002). Further, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Id. at 274.
122 When reviewing a scenario to determine if reasonable suspicion justified an investigative detention, we "view the articula-ble facts in their totality ... [and] judge the officer's conduct in light of common sense and ordinary human experience." Markland, 2005 UT 26, ¶ 11, 112 P.3d 507 (internal quotation marks omitted). In so doing, we "accord deference to an officer's ability to distinguish between innocent and suspicious actions." Id. (citation omitted) (internal quotation marks omitted).
123 Here, the parties do not contest the objective facts apparent to Deputy Luke, or the order in which they occurred. The parties disagree, however, on whether Depu *728 ty Luke's observations were enough to constitute particularized reasonable suspicion with respect to Simons. We conclude that the presence in the car of multiple, chewed baggies, at least one of which contained a white powder, in addition to the driver's apparent impairment, gave rise to reasonable suspicion that Simons was using or possessed illegal drugs. Deputy Luke's question to Simons was, therefore, constitutional. Our conclusion comports with both the precedent of the United States Supreme Court and with our own recent search and seizure cases.
124 In Maryland v. Pringle, the Court held that an officer had probable cause to believe that a front-seat passenger illegally possessed cocaine when that cocaine was found hidden behind the back-seat armrest of the vehicle in which he was travelling with two others. 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). The Court began by stating, "It is uncontested [that] ... upon recovering the five ... baggies ... [the officer] had probable cause to believe a felony had been committed." Id. at 370, 124 S.Ct. 795. The Court answered in the affirmative the question of whether "the officer had probable cause to believe that [the defendant] committed that erime." Id. It found that because none of the occupants claimed ownership, "[tlhe quantity of drugs and cash in the car indicated the likelihood of drug dealing," and found that it was "reasonable for the officer to infer a common enterprise." Id. at 373, 124 S.Ct. 795.
{25 The Court explicitly distinguished its analysis in Pringle with that in Ybarra v. TIilinois, 444 U.S. 85, 100 S.Ct. 838, 62 L.Ed.2d 288 (1979). In Ybarra, the Court held that a search warrant authorizing the search of a public tavern and its barkeep did not permit officers to search a tavern patron without reasonable belief that the patron was armed and dangerous or involved in criminal activity. 444 U.S. at 92-94, 100 S.Ct. 338. The Court reasoned that "a person's mere propingquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Id. at 91, 100 S.Ct. 838. In contrast, the Pringle Court highlighted the fact that "Pringle and his two companions were in a relatively small automobile, not a public tavern." Pringle, 540 U.S. at 373, 124 S.Ct. 795. The Court reasoned that a "car passenger-unlike the unwitting tavern patron in Ybarra-will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." Id. (internal quotation marks omitted).
nonetheless instructive. 126 Though the facts in Pringle differ somewhat from those here, its analysis is First, the Pringle Court implicitly recognized that an officer confronted with the discovery of drugs in a car may at least question the driver and passengers regarding the presence of those drugs. Thus, Deputy Luke was justified in questioning Simons regarding the presence of drugs and paraphernalia. In answer to Deputy Luke's one question, Simons admitted possession of drug paraphernalia. This admission gave Deputy Luke independent probable cause to permissibly extend Simons detention. Just as the presence of drugs in the car in which Pringle was an occupant gave rise to probable cause that Pringle was guilty of possession, the presence of used drug paraphernalia in the car driven by Sor-ensen gave rise to a reasonable suspicion that he or Simons or both men possessed or were using illegal drugs.
127 Though the contraband in each case was different, the actions of the officers in both cases were concomitant with the evidence. See State v. Morris, 2011 UT 40, 29, 259 P.3d 116 ("The standard for reasonable suspicion is relatively low. Indeed, the likelihood of eriminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." (internal quotation marks omitted)).
1 28 Our holding that Deputy Luke's question of Simons was supported by reasonable suspicion likewise aligns with our conclusion that there was reasonable suspicion of drug activity in our recent opinion in State v. Baker, 2010 UT 18, 229 P.3d 650. Though the outcome of Baker turned on the determination that officers found the evidence giving rise to reasonable suspicion only after they had improperly extended the duration of the *729 traffic stop for a dog sniff, we reasoned in that case that the officers had reasonable suspicion of drug possession because "the license of the driver had been suspended for drugs and that [the dog] sniff had revealed the presence of narcotics in the vehicle." Id. 152. As in the present case, Baker was a passenger in a car stopped for a routine traffic violation and gave no independent signs that he was impaired by or possessed drugs. See id. 13. But we concluded that the officers' reasonable suspicion was nonetheless justified by the likely presence of drugs in the car and knowledge of the driver's drug history. Id. 152. Just as such evidence was enough to give rise to the officers' reasonable suspicion in Baker, the presence of chewed baggies containing white powder and Sorensen's apparent impairment provide the requisite evidence for a finding of reasonable suspicion in this case.
IV. DEPUTY LUKE'S ONE BRIEF QUESTION TO SIMONS DID NOT UNCONSTITUTIONALLY EXTEND THE DETENTION
129 While we uphold Deputy Luke's questioning of Simons based on the existence of reasonable suspicion, the fact that Deputy Luke's question resulted in only a de minimis extension of the stop provides an alternative basis for upholding the constitutional validity of the search. Under the controlling Supreme Court precedent of Arizona v. Johnson, Deputy Luke's single question did not improperly extend Simonsg's detention. 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). Where Deputy Luke diligently pursued his investigation of Sorensen's apparent impairment and his "inquirly] [of Simons] did] not measurably extend the duration of the stop," it passes constitutional muster under the Fourth Amendment. Id. at 333, 129 S.Ct. 781.
T 30 The Court in Johnson held that "(aln officer's inquiries into matters unrelated to the justification for the traffic stop ... do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." Id. (finding that an officer's unrelated questions leading to the arrest of a back-seat passenger originally detained as part of a traffic stop were proper). The Court did not, however, elucidate the length of time or the number of questions that would "measurably extend the duration of the stop." Id. This direction lacking, we are reminded that "the touchstone of the Fourth Amendment is reasonableness ... [which] is measured in objective terms by examining the totality of the cireumstances." Ohio v. Robinette, 519 U.S. 88, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (citation omitted) (internal quotation marks omitted); see also State v. Baker, 2010 UT 18, 117, 229 P.3d 650 ("'There is no bright-line test that indicates an appropriate length for a traffie-stop detention; rather, we consider the totality of the cireumstances surrounding the stop to determine whether the length and seope of the detention were reasonable.").
131 While we have yet to consider the scope of the de minimis extension doctrine articulated by the Court in Johnson, federal circuit courts applying Johnson provide some direction. For instance, the United States Court of Appeals for the Sixth Cireuit held that an officer's single question about the possession of firearms or drugs "did not render the traffic stop [for a minor infraction] an unreasonable seizure under the Fourth Amendment." United States v. Everett, 601 F.3d 484, 496 (6th Cir.2010). The Court reasoned that "[It cannot be said that this single question ... constituted a definitive abandonment of the prosecution of the traffic stop in favor of a sustained investigation into drug or firearm offenses. Nor did this single question, taking [only] seconds, constitute the bulk of the interaction...." Id. at 495 (footnote omitted); see also United States v. Dixie, 382 Fed.Appx. 517, 519-20 (7th Cir.2010) (holding that an officer's single, unrelated question regarding weapons that took "only seconds" did not unreasonably extend traffic stop).
132 Similarly, the United States Court of Appeals for the Fourth Cireuit in United States v. Mason held that an officer did not unconstitutionally prolong a traffic stop when the officer asked one to one and a half minutes worth of questions unrelated to the purpose of the original traffic stop, some of *730 which were directed at the passenger. 628 F.3d 123, 131-83 (4th Cir.2010). The court reasoned that, under Johnson, "[an] officer may briefly ask questions unrelated to the stop. For instance, [the question] 'How 'bout them Georgia Bulldogs? dofes] not implicate the Fourth Amendment, provided that the unrelated questioning does not extend the encounter beyond the period reasonably nee-essary to effectuate the purposes of the lawful detention." Id. at 131. But the court made clear that "a traffic stop may not be extended beyond the time reasonably necessary to effectuate the stop, absent reasonable suspicion justifying further detention...." Id. at 182 (emphasis omitted). See also United States v. Stepp, 680 F.3d 651, 663 (6th Cir.2012) (noting that a "dog sniff may render an otherwise lawfal seizure unlawful ... if it unreasonably prolongs the initial stop and the officer lacked an independent reasonable suspicion to extend the stop"); United States v. Macias, 658 F.3d 509, 518 (5th Cir.2011) (stating that "an officer can ask unrelated questions that [measurably] extend the duration of the stop if-but only if-the officer has reasonable suspicion sufficient to support the continued detention" (internal quotation marks omitted)).
4 33 The facts in United States v. Digiov-anni are particularly helpful in defining the parameters of the de minimis extension doe-trine recognized in Johnson. In Digiovanni, the United States Court of Appeals for the Fourth Circuit declared an officer's "extensive and time-consuming" unrelated questioning, absent reasonable suspicion, to be unconstitutional. 650 F.3d 498, 510 (dth Cir.2011). "The record ... made] clear that at just about every turn [the officer] was conducting a drug investigation instead of a traffic infraction investigation." Id. Recognizing that Johnson allows some unrelated questioning, the court found that the officer's "actions and questions ... besp[oke] an utter lack of dili-genee" in pursuing the original purpose of the traffic stop. Id. Citing United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the Digiovamnni court made clear that an officer "must diligently pursue the investigation of the justification for the [original] stop." 650 F.3d at 509. Though officers are "not require[d] ... to move at top speed ... the officer's overall course of action during a traffic stop, viewed objectively and in its totality, [must be] reasonably directed toward the proper ends of the stop." Everett, 601 F.3d at 495 (citation omitted) (internal quotation marks omitted).
The analysis of whether an officer diligently pursued the original purpose of a stop is necessarily a fact-bound inquiry. And on the facts before us, we cannot say that Deputy Luke's single question was improper. The question, "[Do youl halve] anything on [your] person I need to know about?" lasted only seconds and did not measurably extend the duration of the detention. Had Deputy Luke abandoned his investigation of Soren-sen or focused the bulk of his investigation on Simons without reasonable suspicion, the outcome of this analysis would likely be different. But those are not the facts presented here.
 185 Although Johnson allows for a de minimis extension at any point before the conclusion of an otherwise lawful detention, we pause to clarify "that onee the lawful purpose of the stop has concluded, the occupants of the vehicle must be released from their temporary seizure." Baker, 2010 UT 18, 117, 229 P.3d 650. When the lawful purpose of the stop has concluded, whether at the issuance of a warning or a ticket, or with the arrest or dismissal of the detainee, any further questioning, investigation, or detention requires reasonable suspicion and is subject to fresh serutiny under the Fourth Amendment.[3]
*731 136 We do not suggest that an officer must limit his off-topic inquiries to the middle of an otherwise lawful detention, rather than as such a stop comes to a close. Within the confines of an otherwise lawful stop, "the touchstone of the Fourth Amendment is reasonableness." Robinette, 519 U.S. at 39, 117 S.Ct. 417 (internal quotation marks omitted). But, "the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." Johnson, 555 U.S. at 338, 129 S.Ct. 781. Because an officer controls both the direction and duration of a stop, once the officer concludes his investigation and terminates the stop, he cannot reini-tiate the stop without renewed reasonable suspicion.[4]
137 To reinitiate a concluded stop, an officer is required to demonstrate reasonable suspicion, just as when the officer initiated the original stop. The requirement of reasonable suspicion to initiate a stop, or to reinitiate a concluded stop, cannot be supplanted by the Fourth Amendment's reasonableness analysis appropriate within the context of the stop itself. Therefore, when an officer concludes a stop, a detained motorist regains the full constitutional protection of all other motorists of whom the officer does not have a reasonable suspicion.[5]
" 38 While we recognize that a de minimis extension of a traffic stop is not unconstitutional, we do not create a bright-line rule governing the acceptable temporal duration of such a stop. Rather, we hold only that officers must diligently pursue the original purpose of the stop, and that while some unrelated questioning may be tolerated, officers must remain focused on the original purpose of the stop in the absence of reasonable suspicion justifying an expanded investigation. Once officers complete the purpose of the original stop and dispel any reasonable suspicion generated during its pendency, they are then obligated to release the vehicle and its occupants without delay.
CONCLUSION
189 The court of appeals correctly affirmed the district court's denial of Simons motion to suppress for two reasons. First, Deputy Luke had reasonable suspicion to lawfully detain Simons. Second, Deputy Luke's single question to Simons was independently justified because this brief inquiry *732 did not measurably extend Simons's otherwise lawful detention.
Justice PARRISH, authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, and Justice DURHAM joined.
Justice LEE filed a concurring opinion.

. We recite the facts based on testimony offered at a preliminary hearing conducted in the Fourth District Court before Judge James R. Taylor.

. In doing so, Mr. Simons reserved his right to appeal the denial of his motion to suppress. See State v. Sery, 758 P.2d 935, 939 (Utah Ct.App.1988).

. This requirement accords with our holdings in State v. Hansen, 2002 UT 125, 63 P.3d 650; State v. Gettling, 2010 UT 17, 229 P.3d 647; State v. Baker, 2010 UT 18, 229 P.3d 650; and State v. Morris, 2011 UT 40, 259 P.3d 116. In Hansen, the officer's unrelated question was unconstitutional because "the purpose for the initial traffic stop was concluded" and the officer did not have reasonable suspicion of further criminal activity. 2002 UT 125, 132, 63 P.3d 650. The dog sniffs in Gettling and Baker were similarly improper because they occurred after the original, lawful purpose of the stops had concluded and there was no reasonable suspicion of additional criminal activity prior to the dog sniffs. Geffling, 2010 UT 17, 16, 229 P.3d 647; Baker, 2010 UT 18, 158, 229 P.3d 650. Finally, in Morris we held that if an officer, "acting in good faith{,] is rea *731 sonably mistaken about the grounds for a traffic stop," he may explain his mistake to the driver. 2011 UT 40, ¶ 1, 259 P.3d 116. But we made clear that officers must then end the stop unless "new reasonable suspicion of criminal activity immediately arises that justifies further detention." Id. 125.

. The Court's holding in Arizona v. Johnson was based on the notion that courts should not micromanage an officer's control of a traffic stop. 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). It did not erase the constitutional limitations that bracket such a traffic stop. Rather, the Court noted that "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." Id. at 333, 129 S.Ct. 781. Reasonable suspicion of a traffic violation or other illegality, at a minimum, is necessary for officers to initially detain a motorist. And the Court continued, stating, "[the temporary seizure of driver and passengers ordinarily continues, and remains reasonable," only "for the duration of the stop." Id. The Court did not suggest that an officer could detain and investigate a motorist without reasonable suspicion after a stop ends, when an officer has "no further need to control the scene." Id. The Court's holding in Johnson therefore allows a de mini-mus extension during a stop, even as such a stop is winding down, but it does not preclude the necessity of reasonable suspicion to initiate a stop or reinitiate a concluded stop.

. The suggestion that an officer's inquiries occurring after the conclusion of a lawful stop are transformed into a voluntary interaction rests on the questionable assumption that motorists are certain of the duration of their original detainment. Precisely because "officers ... exercise unquestioned command of the situation," Johnson, 555 U.S. at 330, 129 S.Ct. 781 (internal quotation marks omitted), "a traffic stop of a car communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will," id. at 333, 129 S.Ct. 781. Nor would a motorist realize that his or her detainment has transitioned into a voluntary interaction until an officer "inform{s) the driver and passengers they are free to leave." Id. In light of such "unquestioned command," officers are free to pursue their investigation during the pendency of a stop, even when that investigation entails a de minimis extension, but they are required to demonstrate reasonable suspicion to further detain a motorist after the conclusion of the original, lawful detention.